IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENWOOD JOHNSTON; et al, on behalf of themselves and similarly situated employees, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. A. No. 17-1617 |
| | ) Judge Nora Barry Fischer |
| TITAN LOGISTICS & RESOURCES, LLC; TONY DIGIAMBERDINE; and UNITED VISION LOGISTICS, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

I.  INTRODUCTION

This is a proposed hybrid class/collective action brought by Plaintiffs Glenwood Johnston et al. ("Plaintiffs") on behalf of themselves and all other similarly situated drivers[1] against Defendants Titan Logistics & Resources, LLC ("Titan"); Tony DiGiamberdine ("DiGiamberdine"); and United Vision Logistics ("UVL") alleging that Defendants jointly employed them from December 2014 through November 2017 and violated the Fair Labor Standards Act ("FLSA") by paying them a day rate without any overtime compensation in weeks that they were driving small trucks weighing less than 10,000 pounds. (Docket No. 154 ¶ 1). Presently before the Court is a motion filed by Plaintiffs seeking conditional certification of a proposed collective action to include all drivers jointly employed by Defendants; employed solely

---

[1] The Court notes that Defendants have not objected to Plaintiffs' definition of drivers to include individuals: who drove vehicles less than 10,000 lbs GVWR (referred to as "small vehicles") within the meaning of the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), P.L. 110-244, and should be interpreted broadly to include, inter alia, employees holding positions of truck driver, chase driver and dispatcher or other similar positions with responsibility for driving small vehicles.
(Docket No. 155 at 2, n.1).

1

by UVL; or jointly employed by UVL and other entities similar to Titan during the past three years. (Docket No. 154). Neither Titan nor DiGiamberdine contest the motion. (Docket No. 172 at 49). However, UVL maintains that it should not be included in a conditional certification order because it is not a joint employer of the drivers. (Docket No. 156). Plaintiffs' motion has been fully briefed and argued at a motion hearing, the official transcript of which has been filed with the Court. (Docket Nos. 154-156; 164; 167; 168; 171; 172). After careful consideration of the parties' arguments, and for the following reasons, Plaintiffs' Motion [154] is granted, in part, and denied, in part.

II. BACKGROUND

    *A.  UVL's Business Model*

UVL is "an authorized for-hire interstate motor carrier registered with the Federal Motor Carrier Safety Administration ("FMCSA") of the U.S. Department of Transportation ("DOT"), USDOT No. 286600." (Docket No. 156-3 ("ITOA")). UVL provides transportation and logistics services to companies operating in the oil and gas industry, including Schlumberger, Halliburton and others engaged in hydraulic fracking within this District. (Docket No. 156-1 at 30-31). Specifically, UVL fulfills movement requests by its customers to transport equipment, personnel and supplies between sites throughout the United States. (*Id*. at 22). UVL maintains a network of terminals across the country and coordinates movement requests between the customers and truck drivers providing transportation services. (Docket Nos. 156-1 at 47; 156-2 at 35; 65). UVL operates some terminals itself which are referred to as "company terminals" while other terminals are operated by separate entities under Independent Terminal Operator Agreements ("ITOA"). (Docket Nos. 156-1 at 47; 156-2 at 48). UVL is otherwise a non-asset, independent owner-operator business, meaning that it does not own any of the trucks which are used to provide these

transportation services. (Docket No. 156-1 at 18). UVL also claims that it does not employ any of the drivers, whom it maintains are either independent contractors or employed by others such as the independent terminal operators. (Docket No. 156 at 5). At the same time, all movement requests are fulfilled by drivers operating vehicles under UVL's USDOT No. 286600 and UVL ensures that all drivers meet federal standards prior to permitting them to work in this capacity. (Docket Nos. 156-1 at 48; 156-2 at 64).

> B.   *Titan*

Titan is owned and operated by DiGiamberdine out of its Oakdale, Pennsylvania headquarters. *See ITOA*. Titan entered into an ITOA with UVL to operate terminal 750 dated September 28, 2016. *Id*. Pursuant to this agreement, Titan served as an intermediary between UVL and the drivers, with the drivers reporting to Titan. *Id*. According to DiGiamberdine, Titan did not maintain separate agreements with the drivers. (Docket No. 172 at 23).

Among other provisions, the ITOA between UVL and Titan states that: it establishes an independent contractor relationship between UVL and Titan; they are each independent businesses; Titan had no right to represent UVL for any purpose, rely on UVL's reputation or act on behalf of UVL in any manner; and the companies are not co-employers or joint employers of each other's employees. *ITOA* at §§ 1.3; 7.1. The ITOA further provides that Titan is solely responsible for its own employees, including paying wages and benefits and tasked with recruiting owner-operators and engaging them to conduct delivery services under independent operator agreements. *Id*. at §§ 1.3; 2.2; 3.3. Once Titan demonstrated that movement requests had been fulfilled, UVL paid Titan and Titan, in turn, paid the drivers or independent operators. *Id*. at § 6.2. The IOTA also includes indemnification provisions pursuant to which Titan purportedly agreed to indemnify UVL for certain losses including liability for violations of wage and hour laws. *Id*. at

3

§§ 7.2; 9.6. The IOTA is to be interpreted with reference to the laws of the United States and the state of Texas and a corresponding venue provision states that any claim or dispute arising out of this agreement would be brought in state or federal court in Harris County, Texas. *Id.* at § 15.1.

In his declaration, DiGiamberdine writes that the ITOA was prepared by UVL, its terms were not subject to negotiation by him or Titan, and the document was "mostly for show." (Docket No. 160-1 at ¶¶ 4, 9). DiGiamberdine states that "the reality was that UVL controlled pretty much everything having to do with the terminal where I was working or what drivers could drive for Titan and UVL." (*Id.* at ¶ 5). He adds that he was effectively acting as UVL's terminal manager and indeed was provided with letterhead identifying himself as a UVL terminal manager; and had a UVL email address, both of which were used to communicate with UVL's customers. (*Id.* at ¶¶ 6-7). He further notes that "he couldn't and didn't make decisions about how much [the drivers] were paid – UVL and its customers, like Schlumberger, made those decisions – and to the extent I wanted to make any changes in that pay I had to get permission from UVL and its customers to do so." (*Id.* at ¶ 8). At the motion hearing, DiGiamberdine stated that he served as a conduit for UVL to communicate with the drivers regarding various aspects of their duties as he forwarded on UVL emails regarding medical benefits and other UVL programs directly to them. (Docket No. 172 at 19). He also confirmed that terminal number 750 in Oakdale, Pennsylvania was shut down at the time that the IOTA was terminated. (*Id.* at 28).

  C. *Drivers*

The proposed collective action presently consists of approximately 70 individuals, including twenty-four named Plaintiffs and numerous opt-ins, all of whom worked as drivers fulfilling movement requests for UVL who reported to Titan at its Oakdale, Pennsylvania headquarters. Plaintiffs suggest that, if certified, the collective action would include approximately

4

150 drivers. Plaintiffs generally assert that they were jointly employed by Defendants and misclassified as independent contractors such that they were entitled to overtime compensation for hours worked in excess of 40 hours per week.

At this stage, Plaintiffs have submitted the declarations of Johnston; Pamela With; James Michael Herrington; and Brian Gould. (Docket Nos. 155-1:155-4). Johnston and Gould are named Plaintiffs while With and Herrington opted-in to the lawsuit. Johnston drove for UVL/Titan from July 2017 until November 2017 out of the Cheyenne, WY terminal; then continued to work for UVL only out of the Cheyenne terminal until December 2018. (Docket No. 155-1 at ¶ 6). With worked for UVL/Titan from April 2017 until November 2017; for UVL only until January 2018; and jointly for UVL/JR Logistics from January 2018 until September 2018, all out of the Cheyenne, WY terminal. (Docket No 155-2 at ¶ 7). Herrington drove for UVL/Titan from June 2017 until December 2017 out of the Cheyenne, WY, Williston, ND, and Pittsburgh, PA terminals. (Docket No. 155-3 at ¶ 6). Gould worked for UVL/Titan from July 2017 through mid-November 2017 out of the Cheyenne WY and Odessa, TX terminals; and then continued for UVL and JR Logistics out of the Cheyenne terminal until December 2018. (Docket No. 155-4 at ¶ 6). All four of these individuals assert that they were also jointly employed by Schlumberger at the same time as part of the "Driver Outsourcing Program" and are involved in a separate lawsuit filed against Schlumberger at Civil A. No. 19-358.

In their similar declarations, Johnston, With, Herrington and Gould each state that they regularly drove small vehicles weighing less than 10,000 pounds (i.e., Yukons, Suburbans, Expeditions, Explorers), as part of their duties; worked more than forty hours per week, including some weeks where they worked more than sixty hours; they were paid a day rate ($325) plus per diem; and were not paid any overtime compensation. (Docket Nos. 155-1:155-4). They each

assert that other drivers for UVL and Titan were paid under the same compensation system. (*Id*.). They also declare that they joined this lawsuit because they were not paid for all days worked at the day rate. (*Id*.).

The drivers contend that their work was significantly controlled by UVL. (Docket Nos. 65; 155-1:155-4). To this end, they were provided with UVL employee handbooks, subjecting them to UVL policies; filled out various forms bearing UVL letterhead; underwent drug and medical screenings required by UVL; completed online safety trainings produced by UVL; maintained driving logs which were transmitted directly to UVL for monitoring; conducted inspections of vehicles and submitted inspection reports to UVL; and often dealt directly with UVL managers regarding day-to-day activities. (Docket Nos. 65 at ¶ 7f.; 151-1 at ¶ 5; 151-2 at ¶ 5; 151-3 at ¶ 5; 151-4 at ¶ 5). Drivers were also required to contact UVL first in the event of an accident. (*Id*.).

        D.      *Operation and Termination of IOTA*

The IOTA continued until it was terminated by UVL effective November 24, 2017 as is reflected in a letter dated December 8, 2017. (Docket No. 156-4). During the relationship, Titan would submit waybills and invoices to UVL which would be paid within a week. (Docket No. 156 at 7). UVL would separately bill its customer and receive payment within 30-60 days. (*Id*.). UVL asserts that it paid all of Titan's waybills and invoices in full until an audit was conducted in October of 2017. (*Id*.). Indeed, UVL paid Titan $260,000 in payroll advances between September 5, 2017 and November 6, 2017. (*Id*.). The audit ultimately resulted in an agreement between UVL, its customer and Titan, that the customer would receive certain credits until the difference between the charges authorized by the customer and Titan's bills was corrected. (*Id*.). Plaintiffs allege that they were not paid for all services rendered on behalf of UVL/Titan during the time frame of

the audit and conclusion of the IOTA. (Docket Nos. 155-1:155-4). As is noted in the termination letter, UVL representatives worked with Titan to collect all of UVL's property including waybills; paperwork; signage; decals; and truck binders. (Docket No. 156-4). UVL also helped to closeout the terminal and de-lease trucks which DiGiamberdine explained meant to terminate drivers who would no longer continue in the program. (*Id.*).

   E.  *Relevant Procedural History*

Twenty-four Plaintiffs filed this hybrid collective/class action on December 14, 2017 against Titan, DiGiamberdine and Beemac Trucking. (Docket No. 1). An Amended Complaint was filed a week later, adding UVL as a Defendant. (Docket No. 5). Beemac was later dismissed as a defendant. (Docket No. 40). UVL initially moved to dismiss but the Court ordered Plaintiffs to file a Second Amended Complaint to cure any pleading defects. (Docket Nos. 44-45; 58). DiGiamberdine represented himself pro se for some time and left his company unrepresented and subject to default. Ultimately, after several status conferences, counsel appeared to represent both of them. (Docket Nos. 106-107). Since the case was filed, more than forty individuals have filed opt-in notices joining the lawsuit. *See Docket Report*, Civ. A. No. 17-1617.

The same twenty-four Plaintiffs filed their Second Amended Complaint on March 16, 2018 again asserting a hybrid collective/class action against Titan, DiGiamberdine and UVL, all of whom answered. (Docket Nos. 65; 71; 127; 128). The Defendants have also filed cross-claims against each other. (Docket Nos. 71; 127; 128; 144; 145; 146). The parties engaged in limited discovery on conditional certification issues and participated in the Court's ADR program. (Docket No. 84). As limited discovery was completed and the matter was not resolved at ADR, briefing on the instant motion ensued. (Docket Nos. 116-117; 150-153). To that end, Plaintiffs filed their Motion to Conditionally Certify an FLSA Collective and to Facilitate Notice and

supporting Brief on May 8, 2019. (Docket Nos. 154; 155). UVL countered with its Response in Opposition on May 29, 2019. (Docket No. 156). Neither Titan nor Digiamberdine responded. Plaintiffs submitted their Reply on June 6, 2019. (Docket No. 160). After overruling UVL's objection to the individual Plaintiffs' participation by telephone, the Court held a motion hearing on June 11, 2019. (Docket Nos. 163; 164; 172).

At the Court's direction, the parties filed post-hearing supplemental briefs with Defendants making separate filings on June 20, 2019 and Plaintiffs responding on July 1, 2019. (Docket Nos. 167; 168; 171). The official transcript of the motion hearing was filed on July 12, 2019. (Docket No. 172). No further briefing has been requested by the parties such that the motion is now fully briefed and ripe for disposition.

III. LEGAL STANDARD

Section 216(b) of the FLSA authorizes employees to bring an action on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b).

> An action to recover the liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

Courts follow a two-tiered analysis in determining whether a case may move forward as a collective action. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013). The first phase, or "notice" phase, requires that a court "make[] a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Id.* If the plaintiff carries

this burden, the collective action is "conditionally certified" for purposes of notice and discovery. *Id.* The second phase is addressed after all similarly situated employee members have had an opportunity to opt in and further discovery has taken place. *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 534 (3d Cir. 2012). At this "more stringent" stage, the plaintiff must show by a preponderance of the evidence that the class members are similarly situated. *Id.* Articulating the differences in these two stages of the collective action certification analysis, the Third Circuit has explained that the initial step of conditional certification asks whether similarly situated plaintiffs do, in fact, exist; by contrast, the second stage asks whether the specific plaintiffs who have opted-in are, in fact, similarly situated to the named plaintiffs. *Id.* at 536 n.4 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).

Conditional certification poses a lower threshold, requiring a "modest factual showing" that the proposed plaintiffs are similarly situated. *Symczyk*, 656 F.3d at 192-93. This standard is not particularly high—it merely calls for "some evidence, 'beyond mere speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected the other employees." *Id.* at 193 (citing *Smith v. Sovereign Bancorp, Inc.*, Civ. A. No. 03-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003)). Generally, plaintiffs meet the standard by producing some evidence indicating common facts among the parties' claims, and/or a common policy affecting all the collective members. 7B Wright, Miller, & Kane, *Federal Practice and Procedure: Civil* § 1807, at 489–90 (3d ed. 2005).

IV.  DISCUSSION

In their Second Amended Complaint, twenty-four Plaintiffs allege that they were jointly employed by Defendants and were subject to unlawful compensation policies in violation of the FLSA from December 2014 to November 16, 2017. (Docket No. 65). They now seek conditional

certification of a collective action of drivers jointly employed by UVL, Titan and DiGiamberdine; employed by UVL solely; or jointly employed by UVL and some other entity during the past three years, i.e., between 2016 and the present. (Docket Nos. 154; 155). At the outset, Titan and DiGiamberdine do not object to the proposed conditional certification thereby conceding that Plaintiffs have made a modest factual showing that they were employers of the proposed collective drivers, despite the drivers having been classified as independent contractors, and that they were subject to an unlawful day rate compensation system, working in excess of 40 hours per week without being paid any overtime compensation. (Docket No. 172 at 49). Their position is consistent with this Court's prior decisions conditionally certifying FLSA collective actions based upon allegations that employers misclassified them as independent contractors and did not pay overtime compensation for hours worked in excess of 40 hours per week. *See e.g.*, *Hodzic v. Fedex Package Sys., Inc.*, Civ. A. No. 15-956, 2016 WL 6248078, at *8 (W.D. Pa. Oct. 26, 2016) (conditionally certifying collective action of FedEx delivery drivers arguing they were misclassified as independent contractors); *Hively v. Allis-Chalmers Energy*, Civ. A. No. 13-106, 2013 WL 5936418, at *4-5 (W.D. Pa. Nov. 5, 2013) (conditionally certifying collective action of solids control technicians alleging they were misclassified as independent contractors); *Kolasa v. BOS Solutions*, Civ. A. No. 17-1087, 2018 WL 3370675 (W.D. Pa. May 10, 2018) (adopting R&R containing similar allegations as *Hively*). The evidence is also uncontested that Titan and DiGiamberdine acted in this role from the commencement of the IOTA in September of 2016 until UVL terminated the IOTA in November of 2017, at which time the Oakdale, Pennsylvania terminal was closed. Therefore, Plaintiffs' motion will be granted as to their FLSA violations against Titan and DiGiamberdine for the time period of September 2016 to November 2017.

As to the disputes between UVL and Plaintiffs, UVL contests conditional certification and raises two alternative objections: UVL first argues that the evidence is insufficient to establish a modest factual showing that it was a joint employer of Plaintiffs during the relevant time frame; UVL next contends that to the extent that a conditional certification order is issued, it should be limited to UVL, Titan and DiGiamberdine as joint employers for the duration of the IOTA, i.e., from September 2016 to November 2017. (Docket No. 156). Plaintiffs respond that they have made the required modest factual showing as their joint employer allegations have moved beyond the pleading stage and they have further supported same with declarations of four representative drivers and Titan's principal DiGiamberdine, as well as the deposition testimony of two high-level UVL executives, i.e., Rusty Guilbeau and Stan Stricklen. (Docket No. 155). While Plaintiffs believe that they are entitled to conditional certification of the broader collective, counsel asserted at the motion hearing that they are amenable to an order notifying only those drivers jointly employed by UVL, Titan and DiGiarmberdine. (Docket No. 172 at 32-33). Having carefully considered the parties' positions, the Court will grant Plaintiffs' motion to the extent that it will issue an order conditionally certifying a collective action consisting of drivers alleging they were jointly employed by UVL, Titan and DiGiamberdine from September 2016 to November 2017, as they have alleged in their Second Amended Complaint. The Court's rationale follows.

Although the Court is not yet in a position to decide the ultimate merits of Plaintiffs' overtime claims, the initial step is to define the claims at issue. *See Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 199 (W.D. Pa. Dec. 23, 2014) (citation omitted) ("The Court notes at the outset that it is not to consider the disposition of the merits of the claims. Nevertheless, it is necessary to look at what the claims are in order to decide whether other employees are 'similarly situated' for the purposes of notice."). The FLSA establishes federal "'overtime guarantees that

cannot be modified by contract.'" *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Symczyk*, 133 S.Ct. at 1527)). Relevant here, an employer must pay its employees "one and one-half times the employer's regular wage for hours worked in excess of forty hours per week." *Id.* (citing 29 U.S.C. § 207). The parties do not contest that truck drivers operating vehicles with gross weights less than 10,000 pounds are generally not exempt from FLSA overtime requirements. *See, e.g., Dunkel*, 304 F.R.D. at 199-200 (explaining the relevant exemptions regarding truck drivers operating vehicles weighing more than 10,000 pounds).

To obtain conditional certification, it is Plaintiffs' burden to make a "modest factual showing" that there is "a factual nexus between the manner in which the employer's alleged policy affected Plaintiffs and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 195. "In other words, Plaintiffs must show three things: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way." *Dunkel*, 304 F.R.D. at 201. As the Court of Appeals has explained:

> [o]ur first inquiry in most FLSA cases is whether the plaintiff has alleged an actionable employer-employee relationship. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee...." [29 U.S.C.] § 203(d). An "employee" is "any individual employed by an employer." *Id.* § 203(e)(1). To "employ" means "to suffer or permit to work." *Id.* § 203(g). As we have recently recognized, the breadth of these definitions is both intentional and obvious: When determining whether someone is an employee under the FLSA, "economic reality rather than technical concepts is to be the test of employment." Under this theory, the FLSA defines employer "expansively," and with "striking breadth." The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is "the broadest definition that has ever been included in any one act." *In re Enterprise Rent–A–Car Wage & Hour Emp't Prac. Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012) (citations omitted).

*Thompson v. Real Estate Mortgage Network*, 748 F.3d 142, 148 (3d Cir. 2014). The Court of Appeals has further recognized that:

> [u]nder the FLSA, multiple persons or entities can be responsible for a single employee's wages as "joint employers" in certain situations. 29 C.F.R. § 791.2. One such scenario occurs where both employers "exert significant control" over the employee, *N.L.R.B. v. Browning–Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982), "by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b)(3). Under these circumstances, each joint employer may be held jointly and severally liable for the FLSA violations of the other, in addition to direct liability for its own violations.

*Thompson*, 748 F.3d at 148. Courts in the Third Circuit are directed to apply the "*Enterprise* test" when evaluating joint employer claims. *Id.* To that end,

> [w]hen assessing whether a "joint employer" relationship exists, a court should consider the following non-exhaustive list of relevant factors:
>
> (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.
>
> [*In re Enter.*, 683 F.3d at 469]. As with the existence of an employer-employee relationship in the first instance, however, the determination depends on "all the facts in the particular case." 29 C.F.R. § 791.2(a).

*Thompson*, 748 F.3d at 149.

In this Court's estimation, Plaintiffs have made a modest factual showing sufficient to conditionally certify a collective action of drivers alleging they were jointly employed by UVL, Titan and DiGiamberdine from September 2016 to November 2017. *See Symczyk*, 656 F.3d at 192-93; *see also Thompson*, 748 F.3d at 149. Plaintiffs allege in their Second Amended Complaint that they were jointly employed by UVL, Titan and Digiamberdine during that time period and

13

were not paid overtime compensation when working more than 40 hours per week despite performing non-exempt roles driving trucks weighing less than 10,000 pounds. (Docket No. 65). They have sufficiently supported these allegations with the declarations of four drivers (i.e., Johnston, With, Gould, and Herrington), and DiGiarmberine as well as the deposition testimony of UVL executives. (Docket Nos. 155-1:155-4). In this regard, the evidence demonstrates that the drivers were designated as independent contractors reporting to Titan's Oakdale, Pennsylvania terminal from September 2016 to November 2017. (*Id*.). They worked more than 40 hours per week performing non-exempt duties fulfilling movement requests for UVL and its customers but were not provided with overtime pay under the day rate compensation system. (*Id*.). They further assert that for some of the weeks near the end of the relationship between Titan and UVL, they were not paid at all. (*Id*.). There are now 70 drivers who are either named Plaintiffs or have opted-in to the FLSA collective and the four drivers declare that these individuals as well as others worked under the same conditions and were subject to the same unlawful compensation system. (Docket Nos. 65; 155-1:155:4).

On the joint employer issue, this Court's application of the *Enterprise* test to the totality of the circumstances here demonstrates that Plaintiffs have made a modest factual showing that UVL was their joint employer from September 2016 to November 2017. *See Thompson*, 748 F.3d at 149. To this end,

> (1) UVL retained hiring authority over Plaintiffs because all drivers needed to be approved by UVL prior to working for Titan fulfilling movement requests for UVL's customers. UVL also played a role in de-leasing or terminating drivers, as is set forth in the December 6, 2017 letter terminating the IOTA and as was explained by DiGiamberdine at the motion hearing;
>
> (2) There is significant evidence that UVL maintained the authority to promulgate work rules and assignments and set the conditions of the drivers' employment. To this end, DiGiamberdine stated

14

        that he effectively acted as UVL's terminal manager and that the terms of the IOTA detailing that Titan controlled the relationships with the drivers was "mostly for show" and did not reflect the reality of the situation. Among other things, the drivers were subject to UVL's employee handbook; required to pass drug tests and medical screenings; participate in UVL safety trainings; and their day-to-day performance was monitored by UVL through driving logs and inspection reports. UVL provided drivers opportunities to obtain benefits, which DiGiamberdine received from UVL and forwarded on by email. Most pertinent, however, is DiGiamberdine's assertion that UVL and its customers controlled the rate of pay for the drivers and that he/Titan had no authority to change the rate of pay.

(3) As to monitoring of employee performance, UVL monitored the day-to-day performance of the drivers through driving logs and inspection reports and was involved in de-leasing or terminating drivers.

(4) Finally, as to payroll records and the like, UVL audited the waybills and invoices submitted by Titan and funded the drivers' pay through "payroll advances" to Titan. UVL also required Titan to take certain credits to reconcile its accounts with the customers and despite the payroll advances to Titan, the drivers assert that they were not paid at all for certain days they worked.

*In re Enter.*, 683 F.3d at 469. The Court recognizes that UVL challenges the allegations that it is a joint employer and raises several merits-based defenses to the claims. (Docket Nos. 71; 155). However, as in the misclassification cases, because a modest factual showing has been made, these arguments are best reserved for step-two, at which time the merits of the claims are considered and evaluated by the Court against a more fully developed record. *See e.g.*, *Hodzic*, 2016 WL 6248078, at *7 ("It is this Court's opinion that FedEx's arguments opposing conditional certification generally raise merits-based defenses that are best resolved at step-two, including, FedEx's position that it has no employees under the "economic realities test" and the alleged individualized issues regarding potential class members that may disqualify them as prospective members of the class."); *Hively*, 2013 WL 5936418, at *6 ("At this stage, the Court will not reach the merits of

15

Plaintiffs' FLSA claims or make conclusive findings."). Overall, the Court finds that Plaintiffs have made a modest factual showing that UVL, Titan and DiGiamberdine were their joint employers from September 2016 to November 2017 and will certify the FLSA collective action for that time period.[2]

The last issue for the Court to address is Plaintiffs' position that the Court should expand its notice to include drivers who were employed by UVL only and/or UVL and any other entity (including but not limited to J.R. Logistics) during the past three years. (Docket No. 155; 172 at 29). The Court denies this request for several reasons.

First, these proposed collective allegations are beyond the scope of the Second Amended Complaint which is limited to the twenty-four named Plaintiffs' joint employer allegations against Titan, DiGiamberdine and UVL ending in November of 2017 and it is well settled that Plaintiffs cannot amend their complaint through assertions in briefs as they have attempted here. *See e.g., Sokol v. Brent Clark, M.D., P.C.*, Civ. A. No. 16-1477, 2018 WL 658925, at *2 (W.D. Pa. Feb. 1, 2018) ("assertions in Plaintiff's brief do not constitute allegations or an amendment."); *Dongelewicz v. PNC Bank Nat'l. Ass'n.*, 104 F. App'x 811, 819 n. 4 (3d Cir. 2004) (quoting *Williams v. New Castle County*, 970 F.2d 1260, 1266 n. 4 (3d Cir. 1992)) ("Of course, 'a contention in a brief' 'clearly ... may not' be used to 'substitute for an allegation in a complaint'"). Plaintiffs' motion may be denied on this basis alone.

---

[2] The Court notes that the indemnification provisions in the IOTA and the cross-claims asserted by UVL, Titan and DiGiamberdine against each other do not affect the instant ruling on conditional certification. In *Berryman v. Newalta Environmental Serv., Inc.*, 2018 WL 5631169, at *3 (W.D. Pa. Oct. 31, 2018), this Court held that contribution and indemnity claims are not available for violations of the FLSA and that state law contribution and indemnity claims are preempted by the FLSA. However, the FLSA does not preempt claims seeking indemnity and/or contribution for violations of state wage and hour laws. *Id.* The Court also found that it was appropriate to retain supplemental jurisdiction over the state law indemnity and contribution claims and declined to strike the third-party complaint. *Id.* at *4.

Second, to the extent that Plaintiffs desired to amend their complaint a third time in order to assert claims against UVL solely and/or UVL and some other entity for FLSA violations during the past three years, the deadline for filing motions to amend the complaint of May 23, 2018 has long since passed and Plaintiffs have made no effort to demonstrate good cause for failing to comply with the Court's deadline. *See Greygor v. Wexford Health Sources, Inc.*, Civ. A. No. 2:14-CV-1254, 2016 WL 772740, at *2 (W.D. Pa. Feb. 27, 2016) (citing *Walker v. Centocor Ortho Biotech, Inc.*, 558 Fed. App'x 216, 221-22 (3d Cir. 2014) and *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010)) ("A party seeking leave to amend the pleadings after the deadline set by the Court's case management order must satisfy the requirements of Rule 16(b)(4) of the Federal Rules of Civil Procedure."). Further, Plaintiffs cannot meet the good cause standard in this instance because they were clearly aware of the fact that they were working for UVL and/or UVL and other entities after the Titan contract was terminated in November 2017 when they filed their Second Amended Complaint a few months later on March 16, 2018. *See Greygor*, 2016 WL 772740, at *2 (quoting *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. 2010)) (further quotation omitted) ("Many courts have recognized that '[w]here...the party knows or is in possession of information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.'"). They likewise had this information before the deadline of May 23, 2018 to amend pleadings but did not pursue this expanded collective action until filing their motion to certify nearly a year later on May 8, 2019. (*See* Docket No. 154). UVL is also prejudiced by the proposed expansion of the case at this late juncture in that discovery on class action and conditional certification is concluded and, as is reflected in the parties' Rule 26(f) Report, the parties were seeking discovery for the time

period ending on November 24, 2017, which, again, coincided with the termination of the Titan/UVL agreement.  (*See* Docket No. 80 at ¶ 9).

Third, Plaintiffs have not made a modest factual showing that they were similarly situated to the other drivers they seek to notify of the collective action who do not allege that they were jointly employed by Titan, DiGiamberdine and UVL while the IOTA was pending from September 26, 2016 to November 24, 2017.  *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citing *Zavala*, 691 F.3d at 536 & n. 4) ("Applying a 'fairly lenient standard' at the first step, the court makes a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'").  As noted, the joint employer allegations against these entities and Titan's principal are the crux of this case in that the twenty-four named Plaintiffs and the two opt-ins who submitted declarations all alleged that they reported to Titan at its Oakdale, Pennsylvania headquarters and then fulfilled interstate movement requests for UVL during this time period.  (Docket No. 65). Titan's involvement in this case solidifies this Court's jurisdiction over the matter and makes the U.S. District Court for the Western District of Pennsylvania an appropriate venue.  (*Id*. at ¶ 3).  On the other hand, drivers who did not report to Titan but worked for UVL solely or jointly for UVL and JR Logistics or some other unidentified entity – all of which appear to be located outside the Commonwealth – are not similarly situated to the named Plaintiffs regardless of whether they worked in this capacity before, during or after the timeframe of the Titan/UVL IOTA.  Any such drivers necessarily had different employment relationships with those entities making them distinct from the joint employer allegations made by the named plaintiffs, and without involvement of locally-based Titan and DiGiamberdine, any case brought by these individuals would likely be heard in some other jurisdiction.  (*See* Docket No. 65 at ¶¶ 3; 7f.).

18

With respect to named Plaintiffs who allegedly worked with UVL and/or JR Logistics after Titan was terminated in November 2017, the record evidence is sparse, at best, and lacks a direct connection to this District. To reiterate, none of the twenty-four named Plaintiffs alleged in their Second Amended Complaint that they worked for UVL solely or jointly for UVL and some other entity in that subsequent time period. (*See* Docket No. 65). The only evidence supporting these potential claims are three declarations of drivers, two of whom are named Plaintiffs, Johnston and Gould and a single opt-in, With,[3] each of whom admit that they worked out of the Cheyenne, Wyoming terminal. (Docket Nos. 155-1; 155-2; 155-4). These three drivers also allege different employment relationships, i.e.: Johnston was allegedly employed by UVL only; Gould contends he was jointly employed by UVL/JR Logistics; and With maintains that she was employed by UVL only for a portion of the time and jointly by UVL/JR Logistics for the remainder. (*Id*.). There is also <u>no</u> evidence in the record that any of the named Plaintiffs allegedly were jointly employed by UVL and some other entity, aside from JR Logistics. (*See* Docket No. 155). In any event, the record lacks details as to the relationships between these individuals and UVL or UVL/JR Logistics and contains only generic assertions by the declarants that they are aware that other drivers worked in similar capacities and were not paid overtime. *See Dunkel*, 304 F.R.D. at 203 (rejecting declarations from plaintiffs as to work conditions at locations where they did not personally work on the basis that "[t]hese attempts fail because the Plaintiffs have offered little more than a combination of hearsay, guesswork, and enthusiastic hopefulness to support their assertions"). This is simply not enough evidence from which this Court would certify a collective action involving possibly hundreds of drivers making claims that have, at most, an attenuated connection to this District. *Id*.; *see also* Docket No. 172 at 45-46.

---

[3] The Court notes that the other opt-in who submitted a declaration, Herrington, states that he worked for UVL/Titan until December 2017. (Docket No. 155-3).

V.       CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Conditional Certification [154] is GRANTED, IN PART, and DENIED, IN PART. Said motion is granted to the extent that the Court will conditionally certify an FLSA collective action consisting of drivers who allege that: they were jointly employed by UVL, Titan and DiGiamberdine from September 2016 to November of 2017; drove small vehicles weighing less than 10,000 pounds; worked more than 40 hours per week; and were not paid overtime compensation. The term "drivers" includes individuals "holding positions of truck driver, chase driver and dispatcher or other similar positions with responsibility for driving small vehicles." (Docket No. 155 at 1, n.1). The Court also directs the parties to meet and confer in an effort to finalize the content and form of the notice in accordance with this decision and to submit a joint proposal for the Court's consideration within two weeks. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Date:   September 12, 2019

cc/ecf:  All counsel of record.